In The Matter of **LE VEE AND CO.,
Inc., Bankrupt.**

**NORGE CHICAGO CORPORATION and
B-W Acceptance Corporation, Peti-
tioners-(Appellants),**

v.

**Francis J. CURTIS, Trustee, Respondent-
(Appellee).**

**No. 12142.**

United States Court of Appeals
Seventh Circuit.

Feb. 10, 1958.

Daniel Schuyler, John A. Collins,. Chicago, Ill., for appellants.

Leo L. Donahoe, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge,. and HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

Appellants, Norge Chicago Corporation (Norge Chicago) and the Borg-Warner Acceptance Corporation (Acceptance Corporation), filed a petition to reclaim certain property allegedly belonging to them and wrongfully withheld by appellee, the trustee in bankruptcy for for LeVee & Co., Inc. This appeal is from the district court's affirmance of the order of the referee in bankruptcy denying the petition for reclamation. Errors relied upon arise from a failure to grant appellants the relief they claim they are entitled to as a matter of law and from certain rulings on evidence by the referee.

Briefly, the facts are as follows: Norge Chicago is a subsidiary of Norge .

Sales Corporation, the latter being, in turn, a subsidiary of the Borg Warner Corporation. Norge Chicago's business is, in effect, the sale of Norge appliances to retailers throughout the Greater Chicago area, and it maintains a sales organization for that purpose. On February 9, 1957, it caused to be delivered by truck to the bankrupt's premises thirty-four assorted units of Norge home appliances pursuant to an order received from the bankrupt by one of its salesmen. The salesman who took the order wrote up an order blank listing the merchandise and presented it to Russell LeVee, president of the bankrupt, who signed it. On this order blank under the heading of "terms" is written the symbol "B-WAC" which is the standard designation of the other appellant, Borg Warner Acceptance Corporation. The Acceptance Corporation is a finance company and, like Norge Chicago, a subsidiary of Borg Warner. One of its chief functions is to finance dealer inventory through the medium of trust receipts.

According to testimony, in an initial transaction with a dealer, such as this one was, the credit manager of Norge Chicago had authority to commit the Acceptance Corporation. The salesman who solicited the business with the approval of the credit manager, determined that the bankrupt was an acceptable credit risk and offered it "B-WAC terms," *i. e.*, stating that the Acceptance Corporation would advance money for purchases from Norge Chicago provided the dealer would execute the necessary note and trust receipt to secure the advance. At this point, the dealer allegedly executed in blank a "Statement of Trust Receipt Financing" and a financial statement on a form provided by the finance company. The former is a statement required to be filed with the Secretary of State of Illinois pursuant to provisions of the Illinois Uniform Trust Receipts Act. Ill.Rev.Stat., 1955, Ch. 121½, §§ 172, 173. Shortly thereafter the merchandise was delivered to the bankrupt. It should be noted that the trucker's ticket was signed on behalf of the bankrupt, and shows on its face that the merchandise in question was "sold" to the Acceptance Corporation and delivered to the bankrupt.

The promissory note for $3953.88, payable by the bankrupt to the Acceptance Corporation, and the trust receipt were never executed because the president of the bankrupt corporation, Russell LeVee, was in Florida. Norge Chicago unsuccessfully attempted to get these documents signed by the vice-president of the firm who told the Norge Chicago salesman that he had no authority to sign. Appellants thus had to await Le Vee's return and, in the interim, on February 26, 1957, the proceedings in bankruptcy were instituted. On March 4, 1957, the reclamation petition was filed and, subsequently, appellants properly filled in the "Statement of Trust Receipt Financing", which had been signed in blank by the bankrupt, and filed it with the Secretary of State of Illinois well within the statutory period of grace provided for such filing.

From the uncontroverted testimony and the exhibits received in evidence, the referee in bankruptcy found that there was no compliance with the Illinois Uniform Trust Receipts Act. Under the provisions of the uniform act, an entruster is that person who takes or retains a security interest in goods under a trust receipt transaction. An entruster acquires such a security interest upon delivery of the goods to the trustee, (that person who takes possession under a trust receipt arrangement), if such delivery is " * * * against the signing and delivery by the trustee of a writing designating the goods, documents or instruments concerned, and reciting that a security interest therein remains or will remain, or has passed to or will pass to, the entruster * * *." Ill.Rev.Stat., 1955, Ch. 121½, § 167(1) (b) (I). Absent such a trust receipt writing, the requirements of the act are satisfied if the delivery of the merchandise is "pursuant to a prior or concurrent written and signed agreement of the trustee to give [a trust receipt] * * *." Ill.

Rev.Stat., 1955, Ch. 121½, § 167(1) (b) (II). The act provides further: "A contract to give a trust receipt, if in writing and signed by the trustee, shall, with reference to the goods, documents or instruments thereafter delivered by the entruster to the trustee in reliance on such contract * * * be equivalent in all respects to a trust receipt." Ill.Rev.Stat., 1955, Ch. 121½, § 169.

Appellants contend that the requirement of a written agreement to give a trust receipt is satisfied in this case by certain documents which they have placed in evidence. Petitioners' Exhibit 2, the order blank mentioned above, indicates that the terms under which the merchandise was to be delivered were "B-WAC terms." It is appellants' position that this document clearly constitutes an agreement to give a trust receipt since the president of the bankrupt firm, when he signed the order, knew that the symbol "B-WAC" placed under the heading "terms" meant that he was to receive the goods contracted for conditioned upon his acceptance of trust receipt financing with Borg Warner Acceptance Corporation as the entruster. In addition, at the same time the order blank was signed, the "Statement of Trust Receipt Financing" was executed in blank by the bankrupt's president.

There have been no decisions on this precise question, either in Illinois or elsewhere, under the Uniform Trust Receipts Acts which have been adopted in various states. Appellee urges that there should be a requirement of strict compliance with the provisions of the act since it is in derogation of the common law and because a uniform act, by its nature, demands uniform application obtainable solely by strict construction of its provisions. Compliance with the provisions of the act does create a security interest in personal property in the possession of another which at common law would be considered a secret lien between parties not available against creditors. And it has often been held that the recording or notice provisions of statutes which create such security interests must be strictly complied with. General Motors Acceptance Corp. v. Haley, 1952, 329 Mass. 559, 109 N.E.2d 143 Turnes v. Brenckle, 1911, 249 Ill. 394, 99 N.E. 495; Griffen v. Henry, 1901, 99 Ill.App. 284. In the instant case, appellants complied fully with the notice provision of the law, having filed the required statement within thirty days after delivery of the merchandise. See Ill.Rev.Stat., 1955, Ch. 121½, § 173.

Appellee places much reliance upon the case of General Motors Acceptance Corp. v. Haley, supra, as a leading decision for the proposition that a uniform act, by its very nature, requires strict construction. In that case, the Supreme Judicial Court of Massachusetts held, that in determining whether a statement of trust receipt financing met the requirements of the Trust Receipts Act, the act should be strictly construed. The statement of trust receipt financing in that case was held invalid because it bore, as the signature of the trustee, "E. R. Millen, Company" rather than "E. R. Millen, Co., Inc." which latter was the correct designation of the trustee. In so holding the court stated (109 N.E.2d at pages 146–147):

> "If we assume that there was regularity in the office of the Secretary of the Commonwealth, and that the statement was indexed under the name of the trustee as therein given, we are nevertheless of opinion that the designation was not in compliance with the act. This, we must bear in mind, is a uniform law. No pertinent decision on the present point has come to our attention. But it cannot be doubted that the statute must be construed in a way that will tend to uniform decisions in the several States. Any relaxation in strict interpretation tends, in a given case, to carry in the opposite direction and, for future cases, to open the door wider to still other variations. * * * In order to achieve constructive effect, it seems only right that there be exact compliance with the statute."

In the same case, however, the court, in passing on the question of whether or not the trust receipt agreement itself was valid, since it was similarly incorrectly signed, held that it was valid and sufficient to pass title in the merchandise involved. The court said, significantly (at page 147):

"The trust receipts are not for public recording or inspection but constitute private agreements between the entruster and the trustee. There is nothing in these subsections or in the act as a whole to reveal an intent to change the common law of contracts as to what may be a binding form of signature on the part of the corporation."

The question in this case is likewise one of contract law. The written agreement to give a trust receipt is not required for purposes of public recording or inspection. There is nothing in the Illinois act to indicate that any particular form of written agreement to give a trust receipt is required other than that it must be concurrent with or prior to the delivery of the merchandise, and that it must be signed by the trustee. The form and content of the trust receipt itself, however, is carefully defined in the act. It must designate the goods in question and recite that a security interest remains in or passes to the entruster, and it must be signed by the trustee.

The language in the order blank indicating that the "terms" of the arrangement between appellants and the bankrupt were to be "B-WAC" clearly takes meaning from the additional document, the statement of trust receipt financing, which was also placed in evidence by appellants. No explanation is offered by appellee as to any possible meaning of the language on the signed order other than that offered by appellants. It surely cannot be contended that the merchandise was delivered on open account.

We hold that the order blank is a written agreement to give a trust receipt within the meaning of the Illinois Uniform Trust Receipts Act. In view of this holding, we need not consider whether the referee erred in excluding evidence offered by appellants to prove, among other things, trade customs and practices in such trust receipt transactions, or the referee's exclusion of appellants' evidence offering to show that the vice-president of LeVee & Co., Inc. wrongfully held out to Norge Chicago's salesman that he had no authority to sign a trust receipt. It is also unnecessary to pass upon the alternative position of the appellants that, if the requirements of the trust receipt act were not satisfied due to the failure of the bankrupt to sign the trust receipt, then no title in the merchandise passed.

The district court erred in affirming the order of the referee in bankruptcy denying appellants' petition for reclamation. The order of the district court is reversed and this matter is remanded for further proceedings in accord with this opinion.